UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELISSA MCCABE,

        Plaintiff,

  v.

        Case No. 23-cv-459-pp

TIRE WEB LLC,
*d/b/a Online Tires*,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, GRANTING PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF AND DENYING PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT (DKT. NO. 12)**

On April 8, 2023, the plaintiff filed a complaint alleging that the defendant had violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 *et seq.*, because the website onlinetires.com is not formatted to allow a legally blind customer like the plaintiff to access its content. Dkt. No. 1. The affidavit of service reflects that the summons and complaint were served on May 12, 2023. Dkt. No. 5. The defendant never has responded to the complaint or filed an appearance. On July 10, 2023, the plaintiff asked the clerk to enter default, dkt. no. 6, and the clerk did so the next day. On February 16, 2024, after the plaintiff had attempted multiple times to contact the defendant to discuss settlement (as documented in plaintiff's status reports, Dkt. Nos. 8, 10), the plaintiff filed the instant motion for default judgment, seeking declaratory and injunctive relief.

1

## I. Entry of Default

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Fed. R. Civ. P. 4, plaintiffs may serve a corporate defendant using the methods allowed by state law in the state where the federal district is located. Fed. R. Civ. P. 4(e)(1), (h)(1)(A). Wisconsin allows plaintiffs to serve a limited liability company by "personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state . . . [or] left in the office of such officer, director or managing agent with the person who is apparently in charge of the office." Wis. Stat. §801.11(5)(a).

In her motion, the plaintiff represented that she had served the defendant via personal service on May 12, 2023. Dkt. No. 12-1 at 1. The affidavit of service avers that the process server personally delivered the summons, complaint and case opening documents "to the party or person authorized to receive process for the party (1) on: Fri., May. 12, 2023 (2) at: 10:39AM." Dkt. No. 5. The process server served Vahe Tchaghlassian, identified as "Manager and Authorized to Accept Service" for the defendant, at 4490 Ayres Avenue, Vernon, California 90058. Id.

The California Secretary of State's office identifies Tire Web, LLC as a California limited liability company having its principal address at 4490 Ayers Avenue, Vernon, California 90058, with a registered agent named Ara Tchaghlassian. https://bizfileonline.sos.ca.gov/search/business. None of the documents the plaintiff filed clarify whether Ara and Vahe Tchaghlassian are the same person. The affidavit of service identifies Vahe Tchaghlassian as "Manager and Authorized to Accept Service" on behalf of the defendant, and Vahe was served at the defendant's principal address.[1] Dkt. No. 5. But both the affidavit of service and the affidavit submitted by the plaintiff's counsel aver that Vahe Tchaghlassian was "authorized to accept service." Dkt. Nos. 5, 12-1. The court finds that service was proper under Wisconsin law as the summons and complaint were, at minimum, left "with the person who [was] apparently in charge of the office": manager Vahe Tchaghlassian.

## II. Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id.

---

[1] The process server stated that he had served the defendant at 4490 Ayres Avenue, which is not a valid address. 4490 Ayers Avenue is. The court believes this was a typo and that the process server served the defendant at 4490 Ayers Avenue.

The plaintiff asserts that default judgment is proper because the defendant violated Title III of the ADA by making its website inaccessible to legally blind users who require the use of a screen reader. Dkt. No. 13 at 8–10. Screen reader software "reads the content of a webpage to the user" and "allow[s] a visually impaired user to effectively use digital platforms." Dkt. 1 at ¶8 (quoting Andrews v. Blick Art Materials, LLC, Case No. 17-CV-767, 2017 WL 6542466, at *6 (E.D.N.Y. Dec. 21, 2017)).

According to the plaintiff, onlinetires.com is inconsistently compatible with screen reader technology. Id. at ¶27. As alleged in the complaint, when attempting to purchase tires from the defendant's website and attempting to view tires for the particular car in which she is interested, there are several steps a user must go through to select the year, make and model of her car. Id. The website displays a pop-up window to select the year of the car, which properly is announced to the user with a screen reader. Id. But the next option—selection of the make of the car—is not announced to the screen reader user. Id. This prohibits a screen reader user from locating tires compatible with her car. Id. The plaintiff argues that these barriers deny her the full and equal enjoyment of the defendant's services in violation of the ADA.

The plaintiff asserts that the defendant's website is a "place of public accommodation" under the ADA because the Seventh Circuit does not limit places of public accommodation to "physical spaces," and at least one analogous district court case has held that the Seventh Circuit's position extends to websites. Dkt. No. 13 at 9 (quoting Wright v. Thread Experiment,

4

LLC, No. 119CV01423SEBTAB, 2021 WL 243604, at *3 (S.D. Ind. Jan. 22, 2021)). The plaintiff argues that because she is legally blind and thus disabled, her inability to purchase tires on the defendant's website constitutes a violation of the ADA. Id. at 9–10.

    A.    Jurisdiction

The court first must determine whether it has personal jurisdiction over the defendant. e360 Insight, 500 F.3d at 598 ("Default judgments rendered without personal jurisdiction are void."). Jurisdiction must be proper under both the Constitution's due process clause and under the state law of the forum state in which the court sits. Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). The reach of personal jurisdiction under Wisconsin law is equivalent to personal jurisdiction under the due process clause. Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012) (citing Wis. Stat. §801.05). The presence or absence of personal jurisdiction under the due process clause is outcome determinative, and a separate analysis under Wisconsin law is unnecessary. Id.

Under the due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). There are two types of personal jurisdiction: general and specific jurisdiction. Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty., 582

5

Case 2:23-cv-00459-PP   Filed 09/11/24   Page 5 of 19   Document 14

U.S. 255, 262 (2017). General jurisdiction is available where the defendant is "at home" in the forum state, while specific jurisdiction requires that the case arise out of or relate to the defendant's contacts with the forum state. Id. Because the defendant in this case is a California limited liability company with a principal place of business in California (dkt. no. 1 at ¶13), it is not "at home" in Wisconsin and the court must examine whether it has specific jurisdiction over the defendant. Id. at 262 (companies generally are considered "at home" in their place of incorporation and principal place of business).

The Supreme Court and the Seventh Circuit have found that minimum contacts with the forum state sufficient to allow the court to exercise specific jurisdiction can take many forms. uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 426 (7th Cir. 2010) (collecting cases). Relevant here, an out of state defendant will be subject to personal jurisdiction in the forum state if it "purposefully directed conduct" at the forum state and "knowingly did do business" with residents of the forum state. NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 624 (7th Cir. 2022), cert. denied, 143 S. Ct. 577 (2023) (quoting Illinois v. Hemi Grp. LLC, 622 F.3d 754, 757–58 (7th Cir. 2010)). A defendant's actions are "purposefully directed" toward the forum state when it maintains an online presence where it sells products to residents of the forum state. Id. ("Through this online store, [the defendant] unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so"); Curry v. Revolution Lab'ys, LLC, 949 F.3d 385 (7th Cir. 2020) (finding jurisdiction where online retailer's website listed the forum state as a "ship-to"

option on the purchase page and did in fact ship products to customers in the forum state); Hemi, 622 F.3d 757–58 (finding jurisdiction where the defendant knowingly did business with forum state residents via its website).

The complaint alleges that the defendant "participates in [Wisconsin's] economic life" and "entered into contracts for the sale of its products and services with residents of Wisconsin" via its website. Dkt. No. 1 at ¶20. On the defendant's website, Wisconsin is available as a state to which the defendant's products can be shipped. See onlinetires.com/checkout#shipping. Though the complaint does not allege how many successful sales the defendant has made in Wisconsin, even just one sale can suffice for specific jurisdiction. NBA Properties, 46 F.4th at 625 (single sale in forum state sufficient evidence of contacts with the forum state). Taking as true the complaint's allegations—as the court must on a motion for default judgment—the complaint sufficiently alleges that the defendant "purposefully directed" actions toward the Wisconsin market via its website.

For specific jurisdiction to exist, the case also must "arise out of or relate to the defendant's contacts with the forum" state. Id. The defendant has contacts with Wisconsin through its website. The plaintiff, a Wisconsin resident, sought to purchase the defendant's products from its website, but was unsuccessful. Dkt. No. 1 at ¶¶12, 21. The plaintiff's claim arises directly out of the defendant's contacts with Wisconsin because it relates to the accessibility of the defendant's website.

7

The court's exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." NBA Properties, 46 F.4th at 627. The court must consider:

> The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies.

Id. (quoting Hemi, 622 F.3d at 759).

These factors weigh in favor of the court exercising personal jurisdiction over the defendant. Though the defendant is located in California, it has conducted business with Wisconsin customers through its website and must accept the burden of litigating in Wisconsin as a result. Curry, 949 F.3d at 402 ("[The defendant] has held itself as conducting business nationwide through both its interactive website and other websites. Thus, the burden of requiring [the defendant] to defend a lawsuit in Illinois is minimal."). Wisconsin has an interest in protecting its residents, like the plaintiff, from discrimination, and it is more convenient for the plaintiff to litigate in her home state than in another forum. Because this is a default judgment motion, it is more efficient to resolve the case in the current forum than to transfer the case to California and then assess whether default judgment is proper. There is a national interest in eliminating discrimination against disabled individuals, meaning that the final factor does not weigh for or against jurisdiction in this forum. See PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) ("Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate

8

discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" (citations omitted)).

The court finds that the defendant purposefully directed its activities to the forum state by making sales in Wisconsin via its website, the case arises out of those activities and there is no unfairness in requiring the defendant to litigate in this forum. The court has specific personal jurisdiction over the defendant.

B. Standing

Standing issues often arise in cases where a plaintiff seeks to "test" a defendant's compliance with antidiscrimination laws and has no concrete interest in patronizing the defendant's business. Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 833 (7th Cir. 2019). To establish standing, the plaintiff must allege "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013). Because the plaintiff seeks prospective injunctive relief, she also must allege a "real and immediate" threat of future injury. Carello, 930 F.3d at 833 (quoting Simic v. City of Chicago, 851 F.3d 734, 738 (7th Cir. 2017)). This threat of future injury can be shown by "an intent to return" to or use the public accommodation in the future. Scherr, 703 F.3d at 1075.

The plaintiff asserts that she was injured when she attempted to purchase tires from the defendant's website but was unable to complete her

9

Case 2:23-cv-00459-PP    Filed 09/11/24    Page 9 of 19    Document 14

purchase because she "encountered barriers that denied her full and equal access to Defendant's online goods, content, and services." Dkt. No. 1 at ¶21. She alleges that she "intends to attempt to access [onlinetires.com] in the future" to purchase defendant's products, as well as monitor the website for compliance with the ADA. Id. at ¶28. These allegations, taken as true, establish that the plaintiff has suffered a concrete injury, and would suffer a future injury based on her intent to return to the defendant's website.

As to causation and redressability, the plaintiff alleges that the defendant's inaccessible website caused her injury—her inability to complete her purchase—and that her injury can be remedied by the court entering an injunction to cause the defendant to make its website accessible. Dkt. No. 1 at ¶¶21, 27, 29, 31. This is sufficient to establish causation and redressability. See McCabe v. Heid Music Co., Inc., Case No. 23-CV-1215-JPS, 2024 WL 1174352, at *3 (E.D. Wis. Mar. 19, 2024) (finding that the plaintiff had standing to sue in a similar case where "she has sufficiently alleged that Defendant's alleged ADA violations 'affect h[er] personally' and that 'the discrimination will . . . injure her in the future.'" (citations omitted)).

The plaintiff has standing to bring this suit.

C.  Liability

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

10

accommodation." 42 U.S.C. §12182(a). Put more succinctly, Title III "prohibits public accommodations from discriminating on the basis of disability." Access Living of Metro. Chi. v. Uber Technologies, Inc., 958 F.3d 604, 609 (7th Cir. 2020).

To state a claim under Title III of the ADA, the plaintiff must show that (1) she is disabled within the meaning of the ADA, (2) the defendant owns, leases, or operates a place of public accommodation and (3) the defendant discriminated against the plaintiff on the basis of her disability. Mohammed v. DuPage Legal Assistance Found., 781 F. App'x 551, 552 (7th Cir. 2019).

The plaintiff first must establish that she is disabled. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). Under the first definition, the plaintiff must demonstrate her relative inability "to perform a major life activity as compared to most people in the general population." 29 C.F.R. §1630.2(j)(1)(ii). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Richardson v. Chi. Transit Auth., 926 F.3d 881, 888–89 (7th Cir. 2019) (quoting 29 C.F.R. §1630.2(j)(1)(ii)). As to "major life activities" that may be impaired by a disability, the ADA regulations contain a non-exhaustive list which includes "seeing" and "reading" as "major life activities." 29 C.F.R. §1630.2(i)(1)(i).

11

The plaintiff alleges that she is legally blind and "suffers from Nystagmus, a congenital, progressive eye disease." Dkt. No. 1 at ¶12. She states that "she uses Voice-Over and ZoomText to navigate the internet" due to her vision impairment. Id. The plaintiff alleges that she was unable to complete a purchase on the defendant's website due to its limited compatibility with screen readers, implying that she was unable to see or read content on the website absent the screen reader. Id. at ¶27. Taking these allegations as true, the plaintiff has sufficiently stated that her visual impairment substantially limits the major life activities of seeing and reading, and that she is disabled within the meaning of the ADA.

The plaintiff next must establish that the defendant owns and operates a place of public accommodation. The Seventh Circuit has held that a "public accommodation" should not be interpreted "literally, as denoting a physical site." Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC, 268 F.3d 456, 459, 2001 WL 1205383 (7th Cir. 2001). District courts within the Seventh Circuit have interpreted that language to hold that websites are places of public accommodation. Wright, 2021 WL 243604, at *3 ("[C]onsistent with the Seventh Circuit's directives that 'places of public accommodations' are not limited to physical spaces . . . Title III of the ADA governs websites that otherwise satisfy the statutory definition of 'places of public accommodation' under 42 U.S. Code § 12181(7)."); Walsh v. Dania Inc., No. 23 C 14380, 2024 WL 554286, at *4 (N.D. Ill. Feb. 12, 2024). In a case brought in this district by this same plaintiff, alleging the same basic

12

facts against a different defendant, Judge J.P. Stadtmueller concluded that a retail website could be a place of public accommodation under Title III. McCabe, 2024 WL 1174352, at *4. The court agrees with Judge Stadtmueller and the other district judges in the Seventh Circuit that have addressed this issue.

The court finds that the allegations in the complaint, taken as true, establish that onlinetires.com is a place of public accommodation. The complaint alleges that the defendant "owns, operates, and controls" onlinetires.com, through which the defendant sells its products. Dkt. No. 1 at ¶14. Sales or rental establishments are "public accommodations" listed in 42 U.S. Code §12181(7)(E). The defendant's website, a digital sales establishment for purchasing tires, falls within that category. Dkt. No. 1 at ¶¶13–14; Wright, 2021 WL 243604, at *3 (holding that a retail sales website is a public accommodation).

Finally, the plaintiff must establish that the defendant discriminated against her due to her disability. Discrimination under Title III includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." Castelino v. Rose-Hulman Inst. of Tech., 999 F.3d 1031, 1037 (7th Cir. 2021) (quoting 42 U.S.C. §12182(b)(2(A)(ii)).

The complaint alleges that the plaintiff "attempted to access" the defendant's website to purchase tires but was unable to do so due to the

website's incompatibility with her screen reader program. Dkt. No. 1 at ¶27. The plaintiff asserts that if the defendant "removed the access barriers" dhe described in the complaint, she would be able to complete her purchase. Id. at ¶29. Taking these allegations as true, the defendant's failure to make its website accessible to the plaintiff via screen reader is a failure to make "reasonable modifications" necessary to afford the plaintiff equal access to its goods and services. 42 U.S.C. §12182(b)(2(A)(ii); McCabe, 2024 WL 1174352, at *5 (finding the plaintiff's allegations that she was unable to complete her purchase on a musical instrument website due to its incompatibility with screen reader software was sufficient to establish discrimination based on her disability).

The court finds that the complaint states a claim that the defendant violated Title III of the ADA by failing to make its website accessible to the plaintiff.

D. <u>Relief</u>

The plaintiff seeks both declaratory and injunctive relief in her complaint and motion for default judgment. Dkt. Nos. 1 at 15–16, 13 at 14. The plaintiff's default judgment motion does not explain why she is entitled to declaratory relief. Even if she had briefed the issue, "declaratory relief is inappropriate where a private plaintiff seeks relief for discriminatory acts that have already occurred" as declaratory judgment would not "prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties." <u>Marquez v. Riveredge Hosp., Inc.</u>, Case No. 21-CV-3369, 2022 WL 832650, at *6 (N.D.

Ill. Mar. 21, 2022) (collecting cases). The plaintiff's request for a declaration that "at the commencement of this action, Tire Web was in violation of Title III of the ADA" seeks only a declaration that the defendant engaged in discriminatory acts that have already occurred. The court will not grant the request for declaratory judgment.

The plaintiff asks the court to issue an injunction requiring the defendant to take specific steps to bring its website into compliance with the ADA. Dkt. Nos. 1 at ¶17, 13 at 14–18. For the court to issue an injunction, the plaintiff must show "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." LAJIM, LLC v. Gen. Elec. Co., 917 F.3d 933, 944 (7th Cir. 2019) (quoting eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)).

The plaintiff has shown she suffered an irreparable injury. The complaint details the various ways in which the defendant's website is inaccessible to screen reader users. Dkt. No. 1 at ¶27. Accepting the allegations in the complaint as true, these barriers make it impossible for the plaintiff to purchase tires from the defendant's website. Id. at ¶¶27–28. The plaintiff alleges that she "intends to attempt to access" the defendant's website in the future to purchase tires or monitor it for compliance with the ADA. Id. at ¶28. The plaintiff has suffered, and will continue to suffer, an irreparable injury so long

15

as the defendant's website is inaccessible to her. Wright, 2021 WL 243604, at *4 (finding that the plaintiff's continued inability to access the defendant's website due to its incompatibility with screen readers was an irreparable injury).

There is no other remedy at law for the plaintiff's injury. Monetary damages are not available under Title III of the ADA. Scherr v. Marriott Int'l, Inc., 703 F.3d 1069 (7th Cir. 2013). The plaintiff's only option is an injunction.

The balance of hardships between the parties weighs in favor of granting the injunction. Absent an injunction, the plaintiff will continue to be unable to purchase products from the defendant's website. Dkt. No. 1 at ¶27. If the court issued the injunction the plaintiff seeks, the defendant will be required to expend some costs to bring its website into compliance with the ADA. The costs of compliance are "something required of all businesses with public accommodations under the ADA." McCabe, 2024 WL 1174352, at *7. The plaintiff will suffer the greater hardship in the absence of an injunction.

The public interest will be served by an injunction. There is a strong public interest in eliminating discrimination against individuals with disabilities. PGA Tour, 532 U.S. at 675 ("Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" (citations omitted)). The injunction the plaintiff seeks will serve that public interest by making the

16

defendant's website more accessible to visually impaired individuals. The court will issue a permanent injunction.

The court has found that the plaintiff is entitled to a permanent injunction. But court will not issue the proposed order drafted by the plaintiff. Dkt. No. 12-2. That proposed order differs from the injunctive relief requested in the complaint, specifically in its identification of ADASure as the "Mutually Agreed Upon Consultant" that the defendant must use to bring its website into compliance with the ADA. Compare Dkt. No. 1 at ¶17 with Dkt. No. 12-2 at ¶9(a). To the extent that the plaintiff's proposed order differs from the relief requested in the complaint, the court cannot grant it. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The court will consider the injunction contained in the plaintiff's complaint.

The court must "tailor injunctive relief to the scope of the violation found." e360 Insight, 500 F.3d at 604–05 (quoting Nat'l Org. for Women, Inc. v. Scheidler, 396 F.3d 807, 817 (7th Cir. 2005)). The plaintiff's requested injunctive relief is not tailored to the defendant's violation. It seeks to dictate the exact manner that the defendant must use to bring its website into compliance with the ADA, including biennial trainings, periodic auditing and quarterly monitoring by a "Web Accessibility Consultant." Dkt. No. 1 at ¶17(b)–(d). The proposed injunction also would require the defendant to draft and publish a "Web Accessibility Policy" on its website, solicit feedback from users as to that policy and train at least three of its employees to assist users with

17

disabilities with accessibility problems. Id. at ¶17(f)–(k). The plaintiff also seeks leave to monitor the defendant's website for up to two years "to ensure Defendant has adopted and implemented adequate accessibility policies." Id. at ¶17(m).

The requested relief goes far beyond the scope of the violation the court has identified. The defendant must ensure its website is compliant with the ADA. The court will not allow the plaintiff to micromanage that process. To the extent that the defendant does not comply with the injunction, the plaintiff may bring litigate to enforce the injunction. Wright, 2021 WL 243604, at *5 n.4 ("Plaintiff may seek to enforce the injunction through contempt or supplementary proceedings, but we deny the invitation to expressly authorize and compensate Plaintiff's monitoring."). The court will issue an injunction ordering the defendant to bring its website into compliance with the ADA, but will not dictate the methods by which the defendant do so.

The plaintiff also seeks payment of costs and reasonable attorneys' fees, dkt. no. 1 at 15, which are recoverable under the ADA. Lange v. City of Oconto, 28 F.4th 825, at 848–49 (7th Cir. 2022) (prevailing party may recover "a reasonable attorney's fee, including litigation expenses, and costs" (quoting 42 U.S.C. § 12205)). The court will order that the plaintiff must submit a fee petition and supporting documentation by the end of the day on **October 11, 2024**.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for default judgment and request for injunctive relief. Dkt. No. 12.

The court **DENIES** the plaintiff's request for a declaratory judgment. Dkt. No. 12.

The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

The court **ORDERS** that by the end of the day on **October 11, 2024**, the plaintiff must submit a fee petition and supporting documentation for costs and reasonable attorneys' fees incurred.

Dated in Milwaukee, Wisconsin this 11th day of September, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**